**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

CHERISE YUHASZ,

        Plaintiff,

v.                                            Case No:  2:12-cv-427-FtM-29DNF

COMMISIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

# REPORT AND RECOMMENDATION[1]

## TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on Plaintiff Cherise Yuhasz's Memorandum in Opposition to the Commissioner's Decision (Doc. #22) filed on April 8, 2013.  The Commissioner of Social Security (Commissioner) filed a Memorandum in Support of the Commissioner's Decision (Doc. #25) on June 5, 2013.  Thus, the case is now ripe for review.

## FACTS

### Procedural History

Plaintiff filed for disability insurance benefits on October 20, 2008, alleging disability beginning June 8, 2008.  (Tr. 22, 126).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 22, 74, 80).  Plaintiff requested a hearing, which was held by Administrative Law Judge (ALJ) Mary Brennan on March 16, 2010.  (Tr. 38-

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. 405(g).

61). In a decision issued on March 25, 2010, the ALJ denied Plaintiff's claim. (Tr. 22-37). Plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 17, 242-255). The Appeals Council concluded that no basis existed upon which to review the decision of the ALJ, allowing the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3). Plaintiff filed a complaint in this Court on August 6, 2012. This case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

### *Plaintiff's History*

Plaintiff was 39 years old on the alleged onset date of disability. (Tr. 31, 200, 243). Plaintiff graduated high school and completed one year of college. (Tr. 31, 41). She worked in the past as a store laborer, customer service representative/receptionist, front desk clerk, administrative assistant, and collections clerk. (Tr. 30-31, 41, 45-46, 56-57, 168-72, 186-87). Plaintiff claims that she is unable to work because of neck and shoulder problems, left ankle reconstruction, and anxiety and panic attacks. (Tr. 185). Plaintiff states that she can sit for about an hour before having to lie down. (Tr. 185). She testified that she could stand or walk for about ten minutes before having to rest and could lift a half gallon of milk. (Tr. 50-51). Plaintiff states that she can reach away from her body and above her head, but she has trouble with her right arm. (Tr. 51). Plaintiff also states that she cannot drive often or concentrate because her medication makes her drowsy. (Tr. 185).

### *Medical History*

On June 22, 2004, Plaintiff complained of left ankle injury to Christopher Tolerico, M.D. (Tr. 255). On examination, Dr. Tolerico found that Plaintiff had swelling, pain, and limited movement in her left ankle. (Tr. 258). Dr. Tolerico diagnosed Plaintiff as

suffering from an "avulsion chip fracture involving the lateral malleolus associated with localized soft tissue swelling." (Tr. 264). Plaintiff followed up with Dr. Bruce Stamos, who diagnosed Plaintiff with a grade II sprain of the left ankle, peroneal instability, a fracture of the fibula at the attachment of the anterior talofibular ligament, and a positive draw sigh. (Tr. 27). Dr. Stamos subsequently treated Plaintiff for four to five left ankle sprains, prescribing air casts, crutches, and physical therapy. (Tr. 27, 417-28).

On July 31, 2004, Plaintiff complained of chronic ankle pain to Dr. Matthew Regulski. (Tr. 360). On physical examination, Dr. Regulski noted that Plaintiff had a forefoot valgus. (Tr. 360). On examining x-rays of Plaintiff's ankle, Dr. Regulski found a small flake fracture of the distal lateral malleolus and opined that there was a "[p]robable rupture of the ATF and the CFL ligament as well as possible peroneal retinacular rupture and peroneal tendon involvement." (Tr. 361). An MRI ordered by Dr. Regulski revealed that the lateral ligaments were intact, but that there was "an avulsion fracture of the tip of the lateral malleolus, as well as increased density seen on C1 and C2 indicative of a stress fracture to the cuboid area." (Tr. 265, 362).

On November 12, 2004, Plaintiff complained to Dr. Regulski of pain going up her left leg from her ankle. (Tr. 364). On examination of x-rays, Dr. Regulski found that Plaintiff's anterior talofibular ligament was thin and the density of the edema in the cuboid had decreased. (Tr. 364). Dr. Regulski ordered an ultrasound to be performed on Plaintiff's ankle. (Tr. 364).

On December 8, 2004, Dr. Robert C. Floros performed an ultrasound on Plaintiff's ankle. (Tr. 366). Dr. Floros found a hypoechoic change consistent with tear, disruption, and edema. (Tr. 366). Dr. Floros diagnosed Plaintiff as suffering from

anterior talofibular ligament tear and ankle instability, and recommended that Dr. Regulski consider tendon allograft for Plaintiff. (Tr. 366).

On December 10, 2004, Dr. Regulski and Plaintiff made the decision to pursue an operative solution. (Tr. 367). On January 11, 2005, Dr. Regulski performed a double ligament repair of Plaintiff's left ankle using cadaveric tendon. (Tr. 277-78). After the surgery, Dr. Regulski found that Plaintiff had improved dorsiflexion and plantarflexion capabilities, but that her Achilles tendon was very tight. (Tr. 370).

On June 14, 2005, Plaintiff returned to Dr. Regulski for an evaluation, complaining of a significant amount of pain. (Tr. 371). Dr. Regulski administered an injection into Plaintiff's left ankle, providing immediate relief. (Tr. 371). On July 13 and 26, 2005, Plaintiff received similar injections in her left ankle. (Tr. 372).

On August 23, 2005, Dr. Regulski discussed with Plaintiff the possibility of an excision of neuroma in Plaintiff's left leg. (Tr. 372). On September 1, 2005, Dr. Regulski performed an external neurolysis of the sural nerve in Plaintiff's left ankle to repair a stump neuroma and rupture of the peroneal tendon. (Tr. 352).

In January 2006, after examining Plaintiff's medical history, Marvin Winell, M.D., opined that Dr. Regulski deviated from the standard in treating Plaintiff. (Tr. 496). He stated that Plaintiff did not require surgery and that she was probably manifesting symptoms of reflex sympathetic dystrophy, which could have been managed with more conservative treatment. (Tr. 496-97). However, J. Christopher Connor, D.P.M., reported in July 2006, that he believed Dr. Regulski's treatment of Plaintiff was conservative and justified. (Tr. 500-01).

Every three months between September 26, 2007 and July 17, 2008, Plaintiff visited Stephen Karman, M.D., complaining of right shoulder pain and neck pain. (Tr. 544-52, 555, 606, 609-20). On examination, Dr. Karman found Plaintiff's neck and head movement was mildly to moderately restricted in all directions. (Tr. 556). Dr. Karman diagnosed Plaintiff with right scapular muscle strain, muscle ligament fascia disorder, and cervicalgia. (Tr. 557, 608). Dr. Karman did not note any improvement in Plaintiff's condition. (Tr. 544-52, 609-20).

Between October 16, 2007, and February 14, 2008, Plaintiff also visited Peter J. Jaffe, D.O., for physical therapy for her shoulder, approximately one to two times per week. (Tr. 724-801). On October 23, 2007, Dr. Jaffe noted slight left upper dorsal scoliosis and early degenerative changes in the mid-dorsal spine. (Tr. 503). He noted minimal improvement in Plaintiff's symptoms over the time he treated her. (Tr. 724-801).

On December 4, 2007, Plaintiff complained of a knot in her back to Gregory Paine, M.D. (Tr. 528). On examination, Dr. Paine found that Plaintiff had full range of motion with regard to her cervical area and shoulders. (Tr. 529). Dr. Paine diagnosed Plaintiff with cervical myofascial pain, cervicalgia, cervical disk protrusion, and cervical spondylosis. (Tr. 524). On February 7, February 21, and April 17, 2008, Dr. Paine administered cervical epidural injections to reduce Plaintiff's back pain. (Tr. 512, 518, 520).

On April 30, 2008, Plaintiff returned to Dr. Paine, complaining again of back pain. (Tr. 511). On examination, Dr. Paine found tenderness over the right rhomboids. (Tr.

511).  Dr. Paine increased Plaintiff's dose of Neurontin and administered injections into two trigger points in Plaintiff's back.  (Tr. 505-06, 511, 712-18).

On September 5, 2008, Plaintiff complained of muscle aches and neck pain to Mark P. Rubino, M.D.  (Tr. 534).  On examination, Dr. Rubino found that Plaintiff's neck pain was due to her right C6-C7 disc bulge.  (Tr. 535).  Dr. Rubino prescribed Soma and limited Plaintiff to light work ("Maximum 20 lbs or less lift/carry.  May frequently carry 10 lbs.  She must be able to change position as needed.").  (Tr. 536).

On January 21, 2009, state agency consultative examiner Robert O'Leary, D.O., conducted a disability physical examination of Plaintiff.  (Tr. 565-67).  On examination, Dr. O'Leary found that Plaintiff's extremities revealed that pulses were 2+ in all four limbs and an ankle cicatrix was noted.  (Tr. 566).  Reflexes, sensation, and motor strength were normal in each upper and lower extremity and symmetric except for the left ankle at 4 out of 5 strength.  (Tr. 566).  Straight leg raising was negative at 90 degrees while sitting.  (Tr. 566).  Bilateral grip strength testing was normal and symmetric.  (Tr. 566).  No muscle atrophy was noted of either the upper or lower extremities.  (Tr. 566).  Plaintiff had full range of motion in all her joints, except her left ankle, in which she had only 10 degrees of dorsiflexion, 20 degrees plantar flexion, 15 degrees inversion, and 10 degrees eversion.  (Tr. 569).  Plaintiff's gait was antalgic with abnormal and asymmetric stride and stance phase on the left.  (Tr. 567).  Dr. O'Leary concluded that Plaintiff was suffering from left ankle fracture status post reconstruction surgery and multi-regional myofascial pain.  (Tr. 567).

On January 28, 2009, state agency Medical Consultant (MC) James Andriole, D.O., completed a physical RFC assessment form.  (Tr. 571-78).  MC Andriole

6

determined that Plaintiff could never climb ladders, ropes, or scaffolds, but she could occasionally climb ramps and stairs.  (Tr. 573).  MC Andriole further determined that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  (Tr. 572).  MC Andriole also determined that Plaintiff could sit for 6 hours in a normal 8 hour workday and could stand for 6 hours in a normal 8 hour workday.  (Tr. 572).

On March 25, 2009, state agency MC Bettye Stanley, D.O., completed a physical RFC assessment form.  (Tr. 630-37).  MC Stanley determined that Plaintiff's gait was antalgic with abnormal/asymmetric stride.  (Tr. 631).  MC Stanley further determined that Plaintiff could never climb ladders, ropes, or scaffolds.  (Tr. 632).  Plaintiff could occasionally climb ramps and stairs, crawl, and balance.  (Tr. 632).  MC Stanley recommended that Plaintiff avoid concentrated exposure to extreme cold and hazards (machinery, heights, etc.).  (Tr. 634).

*Psychological Evaluation*

On December 15, 2008, Plaintiff was interviewed by licensed psychologist Nilsa Rivera, Ph.D., in conjunction with her application for disability benefits.  (Tr. 562).  Plaintiff reported to Dr. Rivera that she has experienced panic attacks since 1998, when she learned that her grandfather was dying of Leukemia.  (Tr. 563).  Plaintiff stated that she does not like to leave her house, and only does so "twice a week for food."  (Tr. 563).  She generally does very little outside the house and spends her days in bed.  (Tr. 563).  Plaintiff stated that she last visited a psychiatrist in December 2006, when she was treated by Sarah Thomas, M.D.  (Tr. 563).  Plaintiff was prescribed Clonazepam, but was switched to Xanax after moving to Florida.  (Tr. 563).  On examination, Dr.

7

Rivera found that Plaintiff appeared to be well-oriented and her thought processes were logical and organized, but Plaintiff was unable to do serial sevens and suffered partial memory impairment.  (Tr. 562, 564).  Dr. Rivera concluded that Plaintiff suffers from panic disorder with agoraphobia.  (Tr. 564).

On January 22, 2009, Plaintiff complained of anxiety to James Porcelli, M.D.  (Tr. 624).  Dr. Porcelli found that Plaintiff's anxiety was not controlled due to acute stressors.  (Tr. 625).  He prescribed an increased dose of Xanax.  (Tr. 625-26).  At a follow-up appointment on February 17, 2009, Dr. Porcelli noted that Plaintiff's anxiety was under control.  (Tr. 627, 640).

On January 30, 2009, state agency MC Angela Register, Ph.D., completed a psychiatric review technique form.  (Tr. 579-92).  MC Register determined that Plaintiff suffers from depressive disorder and panic disorder with agoraphobia.  (Tr. 582, 584).  MC Register also determined that Plaintiff's symptoms were "fairly stable with meds."  (Tr. 584).  MC Register further determined that Plaintiff's degree of limitation with respect to activities of daily living and maintaining social functioning was mild.  (Tr. 589).  Plaintiff had moderate limitation in maintaining concentration, persistence, and pace.  (Tr. 589).   MC Register determined that Plaintiff suffered no episodes of decompensation of extended duration.  (Tr. 589).  MC Register determined that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions.  (Tr. 593).  Finally, MC Register found Plaintiff moderately limited in her ability to maintain attention and concentration for extended periods.  (Tr. 593).  MC Register opined that Plaintiff was not significantly limited in the other 16 subcategories

of understanding and memory, sustained memory and persistence, adaptation, and social interaction. (Tr. 593-94).

On April 14, 2009, licensed psychologist Cheryl J. Kasprzak, Psy.D., performed a General Clinical Evaluation with Mental Status Examination at the request of the Office of Disability Determinations. (Tr. 682-85). Dr. Kasprzak determined that Plaintiff's intellectual abilities were average and her memory was normal. (Tr. 684). Dr. Kasprzak's diagnostic impression of Plaintiff included panic disorder with agoraphobia and depressive disorder. (Tr. 684).

On May 11, 2009, MC Trina Christner-Renfroe, Psy.D., completed a psychiatric review technique form and mental RFC assessment form. (Tr. 686-703). MC Christner-Renfroe determined that Plaintiff suffers from depressive disorder and panic disorder without agoraphobia. (Tr. 689, 691). MC Christner-Renfroe also reported that Plaintiff is moderately limited in activities of daily living and in maintaining concentration, persistence, or pace. (Tr. 696). MC Christner-Renfroe determined that Plaintiff has mild limitations with regard to maintaining social functioning. (Tr. 696). MC Christner-Renfroe further determined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain concentration, respond appropriately to changes in the work setting, and set realistic goals or plans independently of others. (Tr. 700-01). MC Christner-Renfroe noted that Plaintiff was capable of performing simple repetitive tasks in a normal workday. (Tr. 698).

### *Administrative Law Judge's Decision*

In her decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 8, 2008, the alleged onset date. (Tr. 24). She found that Plaintiff

9

suffered from the severe impairments of status post left ankle fracture with chronic pain, cervical pain, and panic disorder. (Tr. 24). Additionally, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25).

Furthermore, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours total in an 8-hour workday, sit for 6 hours total in an 8 hour workday. The claimant requires a sit/stand option with alternating intervals of one hour to relieve pain and discomfort. The claimant can frequently stoop, kneel, and crouch. The claimant can occasionally climb ramps and stairs, balance, and reach above the shoulder with her right arm, but she can but can [sic] never climb ropes, ladders, or scaffolds. The claimant must avoid working in high exposed places. The claimant can perform simple, routine, repetitive tasks on a sustained basis over a normal 8 hour workday.

(Tr. 26). The ALJ also found that Plaintiff was "unable to perform any past relevant work." (Tr. 30).

At the hearing, the ALJ called Gary Fannin, a vocational expert (VE), to testify. (Tr. 55). The VE was present throughout the hearing and familiar with Plaintiff's vocational background. (Tr. 56-57). The ALJ asked the VE a series of hypothetical questions that assumed an individual with Plaintiff's vocational factors, who could perform light work with additional relevant limitations. (Tr. 57-58). The VE testified that this individual could perform jobs such as cashier, ticket seller, and toll collector. (Tr. 57-59). The VE further testified that about 20,000 such positions existed in Florida and 275,000 in the nation. (Tr. 58-59). Based on the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the

10

claimant can perform." (Tr. 31). Thus, the ALJ found that Plaintiff was not disabled. (Tr. 32).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm., 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2] 20 C.F.R. §§ 404.1520(a), 404.920(a). The ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
    *Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
    *Step 2.* Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
    *Step 3.* Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.
    *Step 4.* Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
    *Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

Where the ALJ's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the ALJ's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the ALJ's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

The ALJ's decision is also reviewed to determine whether the correct legal standards were applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Unlike her factual findings, the ALJ's conclusions of law are not presumed valid. The ALJ's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that a proper legal analysis was conducted mandates reversal. Keeton v. Dep't of Health & Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the Plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505-404.1511.

In this case, Plaintiff asserts that a conflict exists between the ALJ's hypothetical question to the VE, which contained a limitation to simple, routine, repetitive tasks, and the DOT sections for the jobs of cashier, ticket seller, and toll collector, identified by the VE, which indicate a GED reasoning level of 3 for these positions. Thus, Plaintiff contends that the jobs identified by the VE are too complex and remand is appropriate with directions to the ALJ to ask the VE to address the apparent inconsistency.

Hypothetical questions asked by the ALJ to the VE must describe, comprehensively, the claimant's impairments. Loveless vs. Massanari, 136 F.Supp.2d 1245, 1250 (M.D. Ala. 2001) (citing Pendley v. Heckler, 767 F.2d 1561, 1652 (11th Cir. 1985) (per curiam)). If the hypothetical question upon which the VE bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence. Loveless, 136 F. Supp. 2d at 1250. Notwithstanding the foregoing general standard, the hypothetical question posed by the ALJ may omit non-severe impairments. Id.

When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. Humphries v. Barnhart, 183 F. App'x 887, 891 (11th Cir. 2006) (citing Phillips v. Barnhart, 357 F. 3d 1232, 1239 (11th Cir. 2004). That hypothetical question must include all of the claimant's impairments. Humphries, 183 F. App'x at 891 (citing Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)); Jones v. Apfel, 190 F. 3d 1224, 1229 (11th Cir. 1999) cert. denied, 529 U.S. 1089, 120 S. Ct. 1723, 146 L. Ed. 2d 664 (2000). However, the ALJ need only include the claimant's impairments as opposed to each and every symptom allegedly suffered by the claimant but either not supported by medical records or alleviated by medication. Ingram v. Comm'r of Social Security, 496 F.3d 1253, 1270 (11th Cir. 2007).

In this case, the ALJ posed a hypothetical to the VE in which a claimant "could perform light work; she is unable to climb ladders or work in high exposed places, but she can occasionally climb stairs, occasionally balance, occasionally crawl; she can occasionally reach overhead with her right arm." (Tr. 57). The VE stated that such claimant could perform most of Plaintiff's past jobs, with the exception of loading and unloading a truck. (Tr. 57). The ALJ then asked the VE whether the claimant could perform the Plaintiff's past jobs if, in addition to the physical limitations, the claimant was limited to simple, routine, repetitive tasks on a sustained basis with purely routine or simple decision making. (Tr. 57-58). The VE stated that because Plaintiff's previous jobs required knowledge of accounting, the hypothetical claimant would not likely be able to perform those jobs. (Tr. 58). However, the VE stated that "there are other positions—sedentary, light, unskilled, like positions" with sit-stand option, such as

cashier, ticket seller, and toll collector, which the hypothetical claimant could perform. (Tr. 58-59). He testified that all three positions have an SVP level of 2, but he did not discuss the GED reasoning level of the positions. (Tr. 58-59).

The VE testified that in the national economy there were approximately 100,000 cashier positions, with approximately 13,000 in the state of Florida, and approximately 2,500 regionally. (Tr. 58). The VE testified that those numbers would be decreased by about 25 percent if a sitting limitation was added. (Tr. 58-59). The VE stated that there were about 100,000 ticket seller positions nationally, approximately 5,000 in the state of Florida, and 900 to 1,000 regionally. (Tr. 59). He also testified that there were over 100,000 toll collector positions in the United States, 5,000 in Florida, and 750 to 800 regionally. (Tr. 59-60). Based on this testimony, the ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 32).

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform the jobs of cashier, toll collector, and ticket seller because the VE's testimony was inconsistent with the GED reasoning levels associated with those jobs in the Dictionary of Occupational Titles (DOT). Plaintiff's argument is without merit. Currently, the DOT is one of the Social Security Administration's primary references for determining whether work exists in the national economy. See Social Security Ruling (SSR) 00-4p, at *2 (Dec. 4, 2000). Although an ALJ may also rely upon VE testimony, the testimony should be generally consistent with the DOT and "apparent unresolved conflict[s]" must be explained. See id. SSR 00-4p does not require an ALJ to investigate independently a VE's conclusions when the VE testifies that his or her testimony is consistent with the DOT. See, e.g.,

Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793 (11th Cir. 2011); Jones v. Comm'r of Soc. Sec., 423 F. App'x 936 (11th Cir. 2011).

In accordance with SSR 00-4p, the ALJ asked the VE to identify any inconsistencies or conflicts between his responses and the DOT. (Tr. 55-56). The VE did not identify any inconsistencies and Plaintiff's counsel did not inquire about any potential conflicts. (Tr. 60-61). The VE's expert testimony as to Plaintiff's ability to perform the jobs falls within the DOT's "light work" description of those jobs. (Tr. 58-59). See also DOT § 211.462-010, 1991 WL 671840 (G.P.O.); DOT § 211.467-030, 1991 WL 671853 (G.P.O.); DOT § 211.462-038, 1991 WL 671847 (G.P.O.). Furthermore, the Eleventh Circuit has held that there is no apparent inconsistency between a job with a reasoning level of 3 (such as cashier, ticket seller, and toll collector) and a limitation to simple, routine, repetitive work. Leigh v. Comm'r of Soc. Sec., 496 F. App'x 973, 974-75 (11th Cir. 2012). Thus, the ALJ's finding that the VE's testimony was consistent with the DOT is supported by substantial evidence.

Even if the VE's testimony conflicts with the DOT, the ALJ was justified in relying on the VE's evaluation. The Eleventh Circuit has held that when the VE's testimony conflicts with the DOT, the VE's testimony trumps the DOT. Miller v Comm'r, 246 F. App'x 660, 662 (11th Cir. 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999)). The VE's testimony controls because the VE's task is to determine whether there are jobs in the region which the claimant can perform with his precise disabilities or limitations. Id. Further, the Court of Appeals noted that the DOT states it is not a comprehensive source of information and that it should be supplemented with local job information. Lipson v. Barnhart, 347 F. Supp. 2d 1182, 1189 (M.D. Ala. 2004). The VE

provides this vital supplemental information. Id. Therefore, an ALJ may rely on the VE's testimony even if it is inconsistent with the DOT. Jones, 190 F.3d at 1229.

Here, the VE based his decision on the facts given to him by the ALJ (limitation to light work and simple, routine, repetitive tasks, with sit-stand option) and the corresponding DOT strength level of the positions he suggested. (Tr. 57-60). The VE did not discuss the GED reasoning level of the positions, but simply stated that they were "unskilled." (Tr. 58). Therefore, even if the VE's statement that the positions of cashier, toll collector, and ticket seller are unskilled is inconsistent with the DOT, the ALJ was justified in relying on the VE's testimony.

Thus, the undersigned recommends that substantial evidence supports the ALJ's finding that Plaintiff could perform the jobs of cashier, toll collector, and ticket seller.

## CONCLUSION

The overall record, discussed above, provides substantial support for the ALJ's decision. Thus, the undersigned recommends that the decision of the Commissioner be affirmed.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 17th day of September 2013.

/s/ Douglas N. Frazier
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record